UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES A. GRESHAM,

              Plaintiff,              CIVIL ACTION NO. 09-13405

                                    DISTRICT JUDGE NANCY G. EDMUNDS

vs.

                                    MAGISTRATE JUDGE MARK A. RANDON

KERRY T. HAGGARD,
and TIFFANY HAGGARD,

              Defendants.
_____/

**REPORT AND RECOMMENDATION
TO GRANT IN PART AND DENY IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT (DKT. 52) AGAINST DEFENDANT KERRY T. HAGGARD, ONLY**

## I.     RECOMMENDATION

Plaintiff's motion for summary judgment should be **GRANTED IN PART AND**

**DENIED IN PART** and judgment entered against Kerry T. Haggard in the amount of

$2,645,700.00.

## II.     BACKGROUND

### A.    *Statement of Facts*

Plaintiff James A. Gresham alleges that Defendants Kerry T. Haggard and his wife,

Tiffany Haggard defrauded him with regard to the purchase and trade of certain motion picture

lobby cards and posters ("movie memorabilia") from the 1930s and 1940s (Dkt. 52, page 2).

Plaintiff, a Michigan resident and collector of movie memorabilia, was introduced to Haggard, a

Georgia resident, in 2003; the two developed a friendship based upon their shared interest in movie memorabilia (Dkt. 52, page 10).

In late 2006 through the beginning of 2007, Haggard and his wife (collectively "Defendants") represented to Plaintiff that Defendants were trading and selling movie posters and lobby cards and were able to obtain authentic and original items from collectors in California (Dkt. 52, pages 10-11; Ex. 2). However, unbeknownst to Plaintiff, Defendants had enlisted the services of two print and restorative experts, Todd Firetag and Jaime Mendez, to produce counterfeit movie memorabilia in the likeness of original and authentic versions (Dkt. 52, page 11; Exs. 3, 5). Defendants offered these counterfeit products for sale to Plaintiff, representing that each reproduction was original and authentic.

Plaintiff paid Defendants $298,846.00 in cash and cash equivalents; various movie memorabilia valued at $582,054.00 was also delivered by Plaintiff to Defendants through trades of Plaintiff's own original, authentic movie memorabilia; for a total of $881,900.00. (Dkt. 52, page 14; Ex. 6). Plaintiff later learned that the movie posters and lobby cards that he purchased and traded for were counterfeit (Dkt. 52, pages 12-13; Ex. 2).

### B.    *Civil Action Initiated by Plaintiff*

Plaintiff filed suit on August 27, 2009, naming Kerry T. Haggard, Tiffany Haggard, Jaime Mendez, John Doe, and Mary Roe as defendants (Dkt. 1, page 1). Plaintiff later amended his Complaint to sue Kerry T. Haggard and his wife Tiffany Haggard only (Dkt. 23, page 1). The Amended Complaint asserted the following claims: fraud and misrepresentation (Count I); silent fraud (Count II); negligent misrepresentation (Count III); innocent misrepresentation (Count IV); breach of contract (Count V); violation of the Michigan Consumer Protection Act, M.C.L. §

2

445.903 (Count VI); statutory conversion, M.C.L. § 600.2919a (Count VII); common law

conversion (Count VIII); civil conspiracy and concert of action (Count IX); and unjust

enrichment (Count X) (Dkt. 23, pages 20-32).

On November 23, 2009, the Court issued a Temporary Restraining Order ("TRO")

enjoining Haggard from "selling, disposing, dissipating or otherwise transferring" certain listed

assets, including 31 lobby cards and movie posters (Dkt. 22; Dkt. 52, page 16). Tiffany Haggard

filed a Chapter 7 Bankruptcy Petition in the U.S. Bankruptcy Court – District of Arizona Case

No. 2010-bk-19615; Adversary Proceeding No. 2010-ap-01737. The bankruptcy case is still

pending (Dkt. 52, page 16; Exs. 7, 8). Thus, this matter remains stayed as to Tiffany Haggard,

and Plaintiff moves for summary judgment against Haggard only. *Id*.

### C.    *Criminal Case from the Southern District of New York*

On April 28, 2010, Haggard was arrested in the State of Georgia for the above

discussed fraud, and was transferred to the Southern District of New York (Case No. 2010-cr-

00665-CM) and released on bail (Dkt. 52, pages 16-17; Ex. 9). Pursuant to 18 U.S.C. § 1341 and

1342, he was charged with mail fraud and other fraud-related offenses for his scheme "in which

he fraudulently sold or traded, horror movie lobby cards and posters which he falsely represented

to be authentic, when [Haggard] knew that they were reproductions" (Dkt. 52, page 17; Ex. 10).

In early 2011, the Federal Bureau of Investigation ("FBI") acquired information that

Haggard had recruited an individual to sell the movie memorabilia still in his possession. The

FBI concluded that at least three of the 81 items it seized were specifically identified in this

Court's TRO as the items Haggard was enjoined from selling, and which he represented to this

Court that he did not possess (Dkt. 52, page 17; Ex. 11). In March 2011, the Government

requested, and the Southern District of New York granted, revocation of Haggard's bail and

issued a warrant for his arrest (Dkt. 52, page 17; Ex. 12). On November 28, 2011, Haggard

entered a plea of guilty to fraud, in violation of 18 U.S.C. § 1341, and was sentenced to 78

months in prison; the Southern District of New York also imposed an order of restitution in the

amount of $1.38 million to compensate Haggard's victims; Plaintiff anticipates receiving the

majority of this restitution assessment (Dkt. 52, pages 17-18; Ex. 15-16). On April 16, 2012,

Plaintiff filed the pending motion for summary judgment with respect to Counts I through VIII

and Count X against Haggard only (Dkt. 52). Haggard did not respond to the motion. A hearing

was held on June 12, 2012.

## III.     STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The primary question is "whether the

evidence presents a sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477

U.S. 242, 251-52 (1986). A party must support its contentions either by:

> (A) citing to particular parts of materials in the record, including depositions,
> documents, electronically stored information, affidavits or declarations,
> stipulations (including those made for purposes of the motion only), admissions,
> interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence
> of a genuine dispute, or that an adverse party cannot produce admissible
> evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider

4

other materials in the record." Fed. R. Civ. P. 56(c)(3). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The initial burden is upon the party seeking summary judgment, and they must point to evidence "which . . . demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The party seeking summary judgment discharges its burden "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. Once the moving party has met its burden, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "The nonmoving party must 'go beyond the pleadings and by . . . affidavits, or by depositions, answer to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (quoting *Celotex*, 477 U.S. at 324). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252. The nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 248.

## IV.     ANALYSIS AND CONCLUSION

### A.     *Plaintiff's Motion for Summary Judgment Is Unopposed*

5

At the outset, it must be noted that Haggard failed to file a written response to Plaintiff's motion for summary judgment. Thus, Plaintiff's motion may be deemed unopposed. The local court rules in the Eastern District of Michigan required Haggard to file a response if he wished to oppose Plaintiff's motion for summary judgment. *See* E.D. Mich. LR 7.1(c)(1) ("[a] respondent opposing a motion must file a response, including a brief and supporting documents then available"); E.D. Mich. LR 7.1(e)(1)(B) ("[a] response to a dispositive motion must be filed within 21 days after service of the motion.") "[I]f a [party] fails to respond or to otherwise oppose a. . .motion, then the district court may deem the [party] to have waived opposition to the motion." *Humphrey v. United States Attorney General's Office*, 279 Fed. App'x. 328, 331 (6th Cir. 2008) (quoting *Scott v. State of Tennessee*, No. 88–6095, 1989 WL 72470 at *2 (6th Cir. July 3, 1989)) (granting the defendants' unopposed motion to dismiss); *see also, e.g.*, *Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995) ("[f]ailure to follow a district court's local rules is a proper ground for dismissal"); *McKinzy v. Unified Gov't of Wyandotte County/Kansas City, KS*, No. 09–2199–EFM–DWB, 2010 WL 2719852 at *2 (D. Kan. July 8, 2010) (court could grant the defendants' unopposed motion to dismiss and for sanctions "with little further consideration" where the plaintiff failed to file a responsive brief as required by the local court rules); *Zayed v. United States*, 221 F.Supp.2d 813, 815 n.1 (N.D. Ohio 2002) (within court's discretion to consider a motion to dismiss as unopposed due to the plaintiff's lack of a timely response under the local court rule).

Plaintiff's counsel represented at the hearing that the motion for summary judgement was served upon Haggard at the time the motion was filed, which was after the criminal sentencing for the very fraud at issue in this civil complaint. Plaintiff's counsel stated that he served

Haggard while he was housed at the Bureau of Prisons Facility in Brooklyn, New York after Plaintiff's counsel contacted the FBI agent and determined where Haggard was being held pending final disposition to a Bureau of Prisons Facility. Thus, it appears that Haggard is aware of the motion, but failed to respond. As such, the Court would be well within its authority to consider Plaintiff's motion for summary judgment unopposed, and to recommend that the motion be granted, with little further discussion or analysis. Nonetheless, the Court will consider the arguments Plaintiff raises in his motion.

### B.     *Fraud and Misrepresentation (Count I)*

In Count I of his Amended Complaint, Plaintiff alleges Haggard committed fraud and misrepresentation when he told Plaintiff that he was able to obtain unique and valuable movie memorabilia, which he falsely represented to be authentic and original, and, knowing they were counterfeits, Haggard traded and sold them to Plaintiff (Dkt. 23, page 20).

In Michigan, to establish actionable fraud or misrepresentation, Plaintiff must prove:

(1) [t]hat defendant made a material representation; (2) that it was false;
(3) that when he made it he knew it was false, or made it recklessly, without
any knowledge of its truth and as a positive assertion; (4) that he made it with
the intention that it should be acted upon by plaintiff; (5) that plaintiff acted
in reliance upon it; and (6) that he thereby suffered injury.

*Smith v. Bank of Am. Corp.*, 2011 U.S. Dist. LEXIS 14446 at *15 (E.D. Mich. Feb. 14, 2011) *see also Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336 (Mich. 1976) and *Chandler v. Heigho*, 208 Mich. 115, 121 (1919). "Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery." *Smith*, 2011 U.S. Dist. LEXIS 14446 at *15. "Allegations of fraudulent misrepresentation must be made with sufficient particularity and with a sufficient factual basis to

support an inference that they were knowingly made." *Bucciareli v. Nationwide Mut. Ins. Co.*, 662 F.Supp.2d 809, 815 (E.D. Mich. 2009) (citations omitted).

Plaintiff contends that, because Haggard admitted under oath in his criminal case that he defrauded approximately 25 victims – Plaintiff among them – through the sale and/or trade of counterfeit movie memorabilia, there can be no reasonable dispute that he committed fraud (Dkt. 52, pages 20-21; Exs. 9-16). Plaintiff cites *Dresser v. Cradle of Hope Adoption Ctr.*, 358 F.Supp.2d 620, 633 (E.D. Mich. 2005), which says, "[f]raud may be established by circumstantial evidence" (quoting *Foodland Distribs. v. Al-Naimi*, 220 Mich. App. 453, 457-458 (1996)). Here, evidence in the record establishes each of the elements of fraud that Plaintiff must prove under Michigan law. Plaintiff appropriately "cit[ed] to particular parts of materials in the record" and showed that the materials cited do not establish the presence of a genuine dispute. Fed. R. Civ. P. Rule 56 (A) -(B) (quotation marks omitted). Plaintiff pointed to affidavits, Haggard's criminal investigation, and Haggard's conviction, as well as other records which establish the elements of fraud and present no genuine issue for trial (Dkt. 52, pages 20-21; Exs. 2, 5-6, 9-16).

From the record, it is clear that from late 2006 to early 2007 Haggard told Plaintiff that he could obtain authentic movie memorabilia from "three old time collectors" who had previously not disclosed their large collections (Dkt. 52; Exs. 2, 5, 6). At the time of the sale or trade to Plaintiff, Haggard knew that the movie memorabilia was not authentic or valuable, but were counterfeits that he made to influence Plaintiff to take action (Dkt. 52; Exs. 2, 5, 9-16). Plaintiff relied on Haggard's representations by purchasing and trading for movie memorabilia – suffering actual losses in the amount of $881,900.00. *Id.*

8

Moreover, in accordance with Fed. R. Civ. P. Rule 9(b), the Sixth Circuit requires Plaintiff to allege the time, place and content of the alleged misrepresentation, the fraudulent scheme, the fraudulent intent of the defendants, and the injury resulting from the fraud (*Coffey v. Foamex L.P.*, 2 F.3d 157, 161-162 (6th Cir. 1993)); all of which Plaintiff has satisfied (Dkt. 52, Exs. 2, 5-6, 9-16).

Plaintiff has met his initial burden on summary judgment and the burden shifts to Haggard who must show that summary judgment should not be granted for Plaintiff as genuine issues of material fact still exist in the case. Fed. R. Civ. Pro. 56(e). However, Haggard failed to respond to Plaintiff's motion for summary judgment. If a party fails to properly address another party's assertion of fact as required by Rule 56(c), the court may grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it. Fed. R. Civ. Pro. 56(e) (quotation marks omitted). This Magistrate Judge therefore concludes that Plaintiff's motion for summary judgment should be granted as to Count I.

### C.      *Silent Fraud (Count II)*

Plaintiff next argues that he is entitled to summary judgment with respect to his claim of silent fraud against Haggard. To establish a claim of silent fraud, "a plaintiff must show that some type of representation that was false or misleading was made and that there was a legal or equitable duty of disclosure." *Smith*, 2011 U.S. Dist. LEXIS 14446 at *14 (citing *M&D, Inc. v. McConkey*, 231 Mich. App. 22, 28-29 (1998)). A legal duty to disclose most commonly arises in situations where plaintiff makes specific and direct inquiries to defendant, and defendant's incomplete or misleading response as an affirmative misrepresentation causes plaintiff to

9

reasonably rely on that misrepresentation. *See Hord v. Environmental Research Inst.*, 463 Mich. 399, 412 (2000).

Plaintiff cited to the record which indicated that Haggard made false or misleading representations and Haggard owed Plaintiff a duty to disclose (Dkt. 52, pages 21-22). Plaintiff argues that because the counterfeit items were essentially worthless and Plaintiff evidently questioned Haggard as to the items authenticity prior to the completion of each transaction, Haggard had a duty to disclose (Dkt. 52; Ex. 2). Further, Plaintiff contends that because he reasonably relied on Haggard's assertions regarding the authenticity and originality of the movie memorabilia (Dkt. 52; Ex. 2) and Haggard knew that the counterfeit items were not in fact genuine (Dkt. 52; Exs. 2, 5, 9-16), Haggard misrepresented a material fact. He intentionally created an atmosphere of trust, and then betrayed that trust by selling and trading items to Plaintiff (Dkt. 52; Exs. 9-16). Therefore, Plaintiff argues that summary judgment ought to be entered in his favor regarding Count II. This Magistrate Judge agrees.

The record clearly demonstrates that Haggard did in fact make false representations to Plaintiff, and because there was an established relationship between the two parties, he owed Plaintiff a duty of disclosure (Dkt. 52; Exs. 2, 5, 9-16). Haggard failed to respond to Plaintiff's motion with specific facts that would show that there is a genuine issue for trial with regard to Count II. Therefore, Plaintiff's motion for summary judgment with respect to Plaintiff's silent fraud claim should be granted.

### D.     *Negligent Misrepresentation (Count III)*

In Count III of his Complaint, Plaintiff alleges that, even if Haggard claims that his representations were simply negligent, he is at least liable for negligent misrepresentation

10

because "[Haggard] failed to take reasonable care to determine the authenticity of the [c]ounterfeit [i]tems" (Dkt. 52, page 22).

"A claim for negligent misrepresentation requires plaintiff to prove that a party justifiably relied to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Unibar Maint. Servs. v. Saigh*, 283 Mich. App. 609, 622 (2009) *see also Fejedelem v. Kasco*, 269 Mich. App. 499, 502 (2006). In determining whether a duty of care exists, the Court must decide "whether the defendant is under any obligation for the benefit of the particular plaintiff." *Friedman v. Dozorc*, 412 Mich. 1, 22 (1981).

Haggard did in fact owe Plaintiff a duty of care as they established a relationship which Plaintiff believed to be based upon trust and good faith business dealings after Haggard made material representations to Plaintiff concerning the authenticity and quality of the movie memorabilia (Dkt. 52; Exs. 2, 6). Therefore, Haggard was, at the very least, under a duty to reasonably ensure the quality and authenticity of movie memorabilia. Plaintiff has also shown that he justifiably relied upon Haggard's representations because of their established relationship which Haggard manipulated and exploited for his own gain and to Plaintiff's detriment (Dkt. 52; Exs. 2, 6, 9-16).

In the absence of a response from Haggard, summary judgment on this count is also proper.

### E.    *Innocent Misrepresentation (Count IV)*

"A claim of innocent misrepresentation is shown if a party detrimentally relies upon a false representation in such a manner that the injury suffered by that party inures to the benefit of

the party who made the representation." *M&D, Inc. v. McConkey*, 231 Mich. App. 22, 27 (1998)

(citing *United States Fidelity & Guaranty Co. v. Black*, 412 Mich. 99, 118 (1981)). The party

alleging innocent misrepresentation is not required to prove that defendant made the

misrepresentation with the intention of deception or that plaintiff knew that the representation

was false, but plaintiff must show that plaintiff and defendant were in privity of contract in order

to prevail on an innocent misrepresentation claim. *Id*. at 28 (citation and quotations omitted).

Plaintiff contends that, "[e]ven if this Honorable Court were to decide that Plaintiff could

not show that [Haggard] acted with fraudulent intent, there is no genuine issue of material fact

that [he] is liable for innocent misrepresentation" (Dkt. 52, page 23).

This Magistrate Judge agrees. There is ample evidence demonstrating Plaintiff relied

upon Haggard's false representations regarding the authenticity and originality of movie

memorabilia (Dkt. 52, page 23; Exs. 2, 5-6, 9-16). Plaintiff was financially injured as a result of

his reliance on Haggard's misrepresentations which inured to Haggard's benefit. *Id*. Finally,

Plaintiff adequately proved that he and Haggard were in privity of contract; both were personally

involved in the transactions in which Plaintiff paid cash or traded his authentic and valuable

movie memorabilia. *Id*.

Because Plaintiff pleaded claims of both negligent and innocent misrepresentation in the

alternative and Plaintiff produced more than sufficient proof of negligent misrepresentation,

Plaintiff's motion for summary judgment with respect to his innocent misrepresentation claim

should be granted.

### F.      *Breach of Contract (Count V)*

The essential elements of a valid contract under Michigan law include: (1) parties

12

competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation. *See Thomas v. Leja*, 187 Mich. App. 418, 422 (1991) (citing *Detroit Trust Co. v. Struggles*, 289 Mich. 595, 599 (1939)). "Once a valid contract has been established, a plaintiff seeking to recover on a breach of contract theory must then prove by a preponderance of the evidence the terms of the contract, that the defendant breached the terms of the contract, and that the breach caused the plaintiff's injury." *B.A. Constr. & Mgmt. v. Knight Enters., Inc.*, 2011 U.S. Dist. LEXIS 45259 (E.D. Mich. April 27, 2011) (quoting *In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003)).

Plaintiff bases his breach of contract claim on Haggard's failure to supply Plaintiff with his bargained for authentic and original movie memorabilia (Dkt. 52, pages 24-25). Plaintiff appropriately referenced evidence in the record to demonstrate that there is no genuine issue of material fact, and Plaintiff is entitled to summary judgment on his breach of contract claim (Dkt. 52, page 24).

As this suit involves several sales of goods in excess of $1,000, the contracts between Plaintiff and Haggard must satisfy the statute of frauds portion of the UCC. "That is, there must be a writing or an applicable exception in order to render the oral agreement[s] enforceable." *West Cent. Packing, Inc. v. A.F. Murch Co.*, 109 Mich. App. 493, 500 (1981). M.C.L. § 440.2201(3) states, in pertinent part:

> A contract that does not satisfy the requirements of subsection (1) but is valid in other respects is enforceable in any of the following circumstances:  .   .   .
>
> (b) If the party against whom enforcement is sought *admits in his or her pleading or testimony or otherwise in court that a contract for sale was made*, but the contract is not enforceable under this section beyond the quantity of

13

goods admitted.

    (c) *With respect to goods for which payment has been made and accepted* or that have been received and accepted under section 2606.

(emphasis added). The existence of contracts and Haggard's subsequent breaches are incontestable through Haggard's admissions during the criminal case for which he pled guilty to one count of mail fraud and was ordered to pay $1.38 million in restitution. Also, the contracts are documented by Plaintiff's payments to Haggard via Plaintiff's checks, made out to Haggard and endorsed by his signature (Dkt. 52; Exs. 2, 6). Several of Plaintiff's checks to Haggard include a description of the movie memorabilia in the "memo" section of the check, including "BLACK CAT 1 SHEET," "RAVEN CARDS," and "RAVEN TITLE CARD" (Dkt. 52; Ex. 6, page 7, 14-16). Haggard breached these contracts (Dkt. 52, pages 24-25; Ex. 2).

    Moreover, Plaintiff and Haggard were both competent to contract and the sale and/or trade of movie memorabilia were relevant subject matters of contracts. As consideration, Plaintiff gave Haggard authentic and valuable movie memorabilia and cash in exchange for Haggard's promise to deliver authentic product (Dkt. 52; Exs. 2, 5-6). Also, Plaintiff properly proved that both mutuality of agreement and mutuality of obligation existed in the transactions between the two parties; Plaintiff and Haggard were expected to furnish either cash or collectible and valuable movie memorabilia in exchange for the other party's movie memorabilia. *Id.*

    Likewise, Plaintiff established the terms of the contracts, that Haggard subsequently breached the contracts, and that Haggard's breach caused Plaintiff injury when Haggard failed to deliver as promised. (Dkt. 52, pages 24-25; Exs. 2, 9-16).

    In an action based on contract, the injured party is entitled to the benefit of the bargain as

14

set forth in the agreement. *Ferguson v. Pioneer State Mut. Ins. Co.*, 273 Mich. App. 47, 54 (2006). "The proper measure of damages for a breach of contract is 'the pecuniary value of the benefits the aggrieved party would have received if the contract had not been breached.'" *Id*. at 54 (citation omitted). Therefore, in order to give Plaintiff the benefit of the bargain which he is entitled to, Plaintiff ought to be awarded damages in the amount of $881,900.00.

Plaintiff has shown the absence of a genuine issue for trial. Therefore, Plaintiff's motion for summary judgment with regard to Count V is also proper.

### G.    *Michigan Consumer Protection Act (Count VI)*

In Count VI of his Complaint, Plaintiff argues that Haggard's actions violated the Michigan Consumer Protection Act ("MCPA"), because "as a result of the unfair, unconscionable, and deceptive methods, acts, and practices perpetrated by [Haggard] against Plaintiff, Plaintiff suffered a loss" (Dkt. 52, page 26). Plaintiff argues that the following portions of M.C.L. § 445.903(1) were violated by Haggard:

Unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful and are defined as follows: .   .   .

(e) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.   .   .

(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably by known by the consumer.   .   .

(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is.

"[M.C.L. § 445.903(1)] prohibits not only 'deceptive' business practices but also those which are

15

'unfair' and 'unconscionable,'" and the provisions shall be construed with reference to the common law tort of fraud. *See Mayhall v. A.H. Pond Co.*, 129 Mich. App. 178, 182-183 (1983). As discussed in Part IV(B), *supra*, to establish a claim for fraud or misrepresentation, Plaintiff must show: 1) that Haggard made a material misrepresentation; 2) that the misrepresentation was false; 3) that when Haggard made it he knew it was false, reckless, or without any knowledge of its truth as a positive assertion; 4) that he made it with the intent that Plaintiff would act upon it; 5) that Plaintiff took action in reliance upon the false representation; and, 6) that Plaintiff suffered injury. *Smith*, 2011 U.S. Dist. LEXIS 14446 at *15. Pursuant to M.C.L. § 445.911(2), "[e]xcept in a class action, a person who suffers loss as a result of a violation of this act may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorneys' fees." *Mayhall*, 129 Mich. App. at 181.

Plaintiff properly showed that there is no genuine issue of material fact to disprove that Haggard entered into transactions with Plaintiff in an unlawful manner by falsely representing that the counterfeit movie memorabilia "were of a particular standard, grade, or quality . . . when in fact they were reproductions of authentic and original [m]ovie [p]osters and [l]obby [c]ards" (Dkt. 52, page 25; Exs. 2, 5-6, 9-16).

Further, because Plaintiff adequately proved fraud in Count I of his complaint, he has shown Haggard engaged in unfair, unconscionable, and deceptive bargaining and sales methods in violation of the MCPA (Dkt. 52, pages 19-21). Ample evidence exists showing that Haggard failed to reveal a material fact which deceived Plaintiff, and which Plaintiff could not have reasonably known. (Dkt. 52, Exs. 2, 5-6, 9-16). Similarly, Plaintiff has demonstrated that there is no genuine issue of material fact that Haggard made a representation or statement of fact material

16

to the transaction such that Plaintiff reasonably believed the state of affairs to be other than it actually was. *Id*.

Plaintiff suffered a loss as a result of Haggard's violation of the MCPA, and is therefore entitled to actual damages in the amount of $881,900.00 for Plaintiff's loss in cash paid and trades to Haggard, and in the amount of $66,659.28[1] for Plaintiff's attorney's fees (Dkt. 52, page 26; Exs. 6, 17). Thus, Plaintiff's motion for summary judgment with respect to Count VI should also be granted.

### H.      Statutory Conversion (Count VII) and Treble Damages Claim

Statutory conversion is governed by M.C.L. § 600.2919a which states:

(1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:.

(a) Another person's stealing or embezzling property or converting property to the other person's own use.

(b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.

As discussed below in Part IV(I), Plaintiff has properly demonstrated that Haggard violated a legal duty separate and distinct from its contractual obligations, and, as such, a cause of action in tort lies. *Rinaldo's Constr. Corp. v. Michigan Bell Tel. Co.*, 559 N.W.2d 647, 658 (Mich. 1997). Plaintiff argues that "there is no genuine issue of material fact that Defendant knowingly received and concealed the converted property," and Haggard is therefore liable for statutory conversion

---

[1] Plaintiff noted that this amount does not include costs and fees associated with the filing of Plaintiff's motion for summary judgment on April 16, 2012.

(Dkt. 52, page 27).

Prior to the conversion statute's amendment[2] in June 2005, the Michigan Court of Appeals interpreted the meaning of M.C.L. § 600.2919a in *Marshall Lasser, P.C. v. George*, 252 Mich. App. 104, 112 (2002):

> The actions proscribed – buying, receiving, or aiding in the concealment – all occur after the property has been stolen, embezzled, or converted by the principal. In other words, the statute is not designed to provide a remedy against the individual who has actually stolen, embezzled, or converted the property. Indeed, the statute carefully compartmentalizes the actions of those assisting and the actions of the principal.

However, the statute was amended in June 2005, and the Michigan legislature altered the scope of M.C.L. § 600.2919a to apply to the person guilty of conversion as well as the one who aids him. The Court in *Lasser* even asserted, "[i]f the Legislature had meant for the statute to also apply to the thief as well as someone who aids him, it could have written the statute to include the thief's action in possessing or concealing the property," which the Michigan legislature did in 2005. *Lasser*, 252 Mich. App. at 112. Thus, a plaintiff now has a claim for statutory conversion against a defendant who, himself, actually stole, embezzled, or converted property belonging to him.

It is clear from the record that Haggard did in fact convert Plaintiff's property when Haggard took Plaintiff's authentic movie memorabilia as payment for counterfeit items (Dkt. 52; Exs. 2, 11-12). Also, Plaintiff has demonstrated that Haggard enlisted the help of an individual to

---

[2] Public Act 2005, No. 44, rewrote Sec. 2919a, which read: "A person damaged as a result of another person's buying, receiving, or aiding in the concealment of any stolen, embezzled, or converted property when the person buying, receiving, or aiding in the concealment of any stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney's fees. This remedy shall be in addition to any other right or remedy the person may have at law or otherwise." Public Act 2005, No. 44, was ordered to take immediate effect, and was approved and filed June 16, 2005.

18

sell certain movie memorabilia in Haggard's possession, on his behalf, and in violation of the TRO imposed by this Court and discussed in Part II(C), *supra* (Dkt. 52; Exs. 11-12).

Plaintiff has proved that there is no genuine issue of material fact that Haggard violated M.C.L. § 600.2919a(1)(a) when he converted Plaintiff's property to Haggard's own use. Therefore, summary judgment in favor of Plaintiff and against Haggard with respect to Count VII, entitling Plaintiff to 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees in the amount of $2,645,700.00[3] is proper.

## I.     *Common Law Conversion (Count VIII)*

In a civil action, the tort of conversion is "any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Sudden Serv. v. Brockman Forklifts, Inc.* 647 F. Supp. 2d 811, 815 (E.D. Mich. 2008) (quoting *Foremost Ins. Co. Allstate Ins. Co.*, 439 Mich. 378, 391 (1992)). Conversion occurs at the point when such wrongful dominion is asserted. *Trail Clinic, P.C. v. Bloch*, 114 Mich. App. 700, 705 (1982).

Plaintiff asserts a claim of conversion based on Haggard's wrongful possession and control over Plaintiff's authentic lobby cards and posters (Dkt. 52, page 27). Specifically, Plaintiff argues that Haggard was essentially "able to wrongfully obtain possession and control of Plaintiff's [a]uthentic [c]ards and [p]osters,. . ., without exchanging anything in return, as part of [Defendant's] fraudulent scheme against Plaintiff" (Dkt. 52, page 27). For the reasons discussed in Part II(C), *supra*, this Magistrate Judge finds that Plaintiff has proved the absence of a genuine

---

[3] Plaintiff alleges actual damages totaling $881,900.00 and attorneys' fees of $66,659.28. As stated in Part IV(G), the Plaintiff noted that the calculated figure for attorneys' fees of $66,659.28 did not include the costs associated with filing his motion for summary judgment on April 16, 2012. ($881,900.00 x 3) = $2,645,700.00

dispute as to whether Haggard returned Plaintiff's authentic movie memorabilia.

Because this Magistrate Judge previously determined that there was an enforceable contract between Plaintiff and Haggard, it must now be determined whether Plaintiff may recover under both contract and tort theories.

It is well-settled under Michigan law that an action in tort requires a breach of duty separate and distinct from a breach of contract. *Sudden Serv.*, 647 F. Supp. 2d at 815. Put another way, "if a relation exists which would give rise to a legal duty without enforcing the contract promise itself, the tort action will lie, otherwise not." *See Hart v. Ludwig*, 347 Mich. 559, 565 (1956). Thus, the Court must determine whether Haggard owed Plaintiff "an independent duty, separate and distinct from its contractual obligations, that would give rise to the tort causes of action." *CONRAIL v. Grand Trunk W. R.R. Co.*, 2009 U.S. Dist. LEXIS 98152 at *22 (E.D. Mich. Oct. 22, 2009) (citing *Rinaldo's*, 559 N.W.2d at 658).

As discussed in Parts IV(C) and (D), *supra*, Haggard did in fact owe Plaintiff a separate and distinct legal duty to refrain from taking actions inconsistent with Plaintiff's ownership interest in his authentic movie memorabilia. Haggard's duty to return Plaintiff's movie posters and lobby cards would have existed even in the absence of a contract. Also, a TRO was imposed on Haggard enjoining him from selling certain movie posters and lobby cards – some of which rightfully belonged to Plaintiff – yet Haggard continued to attempt to sell the items (Dkt. 52; Exs. 10-12).

Therefore, this Magistrate Judge finds that Plaintiff may maintain both a conversion claim as well as a breach of contract claim. Since Plaintiff has properly demonstrated that no genuine issue of material fact exists, Plaintiff is entitled to summary judgment on his tort claim of

20

conversion.

       **J.**     ***Unjust Enrichment (Count X)***

Under Michigan law, "[w]here the parties have an enforceable contract and merely dispute its terms, scope, or effect, one party cannot recover for promissory estoppel and unjust enrichment." *Terry Barr Sales Agency v. All-Lock Co.*, 96 F.3d 174, 181 (6th Cir. 1996). Likewise, if an implied-in-fact contract is found to have been established, "the existence of an implied-in-fact contract, which provides a legal remedy, will bar a claim of unjust enrichment, which seeks an equitable remedy." See *Burbick v. Premiere Steel, L.L.C.*, 2008 U.S. Dist. LEXIS 86670 *10 (E.D. Mich. Oct. 23, 2008) (quoting *Kingsley Assocs. v. Moll Plasticrafters*, 65 F.3d 498, 506 (6th Cir. 1995)).

Therefore, as this Magistrate Judge has previously determined that there is sufficient evidence to establish the existence of valid, enforceable contracts between Plaintiff and Haggard, it is unnecessary to address whether Plaintiff should recover under a theory of unjust enrichment. Any additional recovery under a theory of unjust enrichment is precluded by the finding of an enforceable contract.

**V.**    **CONCLUSION**

For the reasons stated above, it is **RECOMMENDED** that Plaintiff's Motion for Summary Judgment with respect to Counts I through VIII be **GRANTED**, and Plaintiff's Motion for Summary Judgment with respect to Count X be **DENIED**. Judgment should be entered in Plaintiff's favor and against Haggard in the amount of $2,645,700.00.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as

provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark. A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated: August 7, 2012

### *Certificate of Service*

*I hereby certify that a copy of the foregoing document was served on the parties of record on this date, August 7, 2012, by electronic and/or first class U.S. mail.*

*s/Melody Miles*
*Case Manager to Magistrate Judge Mark A. Randon*
*(313) 234-5540*

23